# Zell's Appeal.

1. One not a party to a contract, made for his benefit, can enforce his rights in equity against one, a party to the contract, who seeks to appropriate to the payment of the debt due him, the property provided in said contract for the payment of debts, including a debt due him, to the exclusion of the party for whose benefit the contract was made.

2. A creditor who advances money to pay a debt of his debtor is entitled to a preference for the money so advanced, as against creditors standing on the same footing, as the party paid, in the distribution of the property provided by contract between said creditor and debtor for the payment of the debts of the said debtor.

3. A and B entered into articles of co-partnership to carry on the publishing business. A was largely indebted to B and others, which indebtedness it was agreed between them A should pay out of the profits of the business, after the expenditure of sufficient to keep up the stock,

and each partner had drawn a stipulated sum each month. It was also agreed between them that after the debts of B were paid, the stock on hand and all of B's stock and fixtures were to be equally divided, or the value thereof credited to each. A induced B to advance enough to pay C, one of B's said creditors. A failed to pay B and some others. On dissolution of the partnership B took all the stock and fixtures, and claimed credit against them for the amount due him by A, and also for the amount he had advanced to pay C. *Held*, reversing the court below, that B was entitled to be paid in full for the amount advanced to pay C, and that he was entitled to his *pro rata* share with A's said other creditors on the said amount A owed him.

January 18th, 1886.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the decree of the Court of Common Pleas, No. 2, of *Philadelphia county :* In equity : Of January Term, 1885, No. 157.

This was an appeal by T. Elwood Zell, from a decree of said court, sustaining a bill wherein Charles H. Davis, the executor of B. H. Moore, deceased, Porter and Coates, J. W. Baker and J. C. Grubb and Co. were plaintiffs and he was the defendant.

The bill charged substantially that on the seventeenth day of October, 1876, the defendant and Charles H. Davis entered into co-partnership in the publishing business under the firm name of Zell, Davis & Co., by an agreement which recited that Davis, having been jointly indebted with one Baker to various persons, had individually assumed the payment of these debts—including T. Ellwood Zell, $15,050, Porter & Coates, $2,723.62, and Jessup & Moore $17,615.05—that Davis was the owner of certain stock valued at about $33,000, which he contributed as capital stock to the firm of Zell, Davis & Co., and that the property contributed by Zell to the said stock was agreed to be of the value of $92,769.17.

The bill further charged, *inter alia*, that it was agreed that the defendant, in addition to certain monthly sums for his individual use, should draw from the profits six per cent. interest on the debt of $15,050 due him, and that after payment of the current expenses and in maintaining the stock Davis should draw from the profits moneys to pay the debts referred to, and after such payment the assets remaining should be equally divided, but if any of such debts remained unpaid then an adequate portion of the assets should be appropriated for their payment and only the surplus divided ; that the partnership continued until the middle of March, 1880, and that no part of the indebtedness of $17,615.65 to the estate of B. H. Moore has been paid ; that all of the debts of the partnership were paid ; that there were at the time of its termination assets of the co-partnership of the value of about $21,000 in the posses-

sion and under the control of the defendant; that upon the request of the executors of B. H. Moore to the defendant that he should comply with the agreement, he exhibited "an account of the said assets, which were insufficient to pay in full the debts aforesaid, but from which in said account he had deducted the full amount of his debt of $15,050, together with the interest thereon."

The bill then charged that "it is the defendant's purpose to convert the said assets in his hands into money, and misapply the same to the payment in full of the debt of $15,050 due him," and prayed (1) discovery, (2) an injunction to restrain the defendant from converting into money or disposing of the assets, (3) specific performance, and (4) general relief.

Appended to the bill was a copy of the partnership agreement between Davis & Zell, dated October 17th, 1876, the material parts of which were "Fourth.—The said Zell shall draw for his use monthly at the rate of $500, and the said Davis at the rate of $250.

"The said Zell shall also draw quarterly interest at the rate of six per cent. on $15,050 until said debt shall be paid; interest to be reduced as the principal is paid. After the payment of the current expenses in conduct of the business and in maintaining the stock, in addition to the sum as above the said Davis shall draw for the payment of the debts hereinbefore enumerated.

"When said debts are fully paid, the stock on hand and everything of which the said Davis was the sole owner immediately before the execution of this agreement shall be equally divided, or the value thereof credited to each.

"The profits and losses in this conduct of the co-partnership shall be divided, one third to Davis and two thirds to Zell."

"Fifth.—　. . . . . In case of the inability of the said Charles H. Davis to pay the debts before enumerated as they shall become due, all renewals of the same shall be individual, and in no event shall the firm name be used in reference to the said debts."

"Seventh.—　. . . . . At the end of the co-partnership . . . . . If all the debts enumerated are paid, then the assets of all kinds shall be equally divided, but if they are unpaid an adequate portion of the assets shall be appropriated for their payment, and only the surplus be divided.

"The answer of the defendant admitted the execution of the agreement, and set forth that the defendant had nothing to do with the enumerated debts; that Davis was alone liable for them; that during the continuance of the copartnership it never happened that Davis could draw any sum for their payment, but that defendant had paid of them about $7,000.

" That on the retirement of Davis there was stock on hand contributed as capital by Davis, and that " as he was indebted to me individually . . . . . I credited him with the appraisement made with the inventory in said articles recited, though said credit was more than the actual value thereof then and now."

The answer also set out and adopted a letter written October 21st, 1880, by counsel for defendant to counsel for plaintiffs, which said, *inter alia*:

" At the end Mr. Davis retired. The account of the assets · of all kinds at that time showed them to be worth $26,022.03. The enumerated debts were not paid. Zell did not draw his interest, but paid most of the debt of Fagan & Son, and to avoid the sale of the interest of Davis paid a ratable portion of the debt of Felt, which had passed to judgment. On the formation of the firm, Davis credited himself with the aforesaid inventory in the books of the firm.

Now Zell claims, as during the time of the partnership the profits were only sufficient to pay the current expenses and maintain the stock, that in an account with Davis he can charge against the credits aforesaid his debt and the interest thereon, and the amount he has paid Fagan & Son. . . . . .

The condition of things is shown by the inclosed account." The account which had been inclosed in the letter showed credits to Davis amounting in the aggregate to $41,399.44, which included the following:

"1876, October 18.   By sundries,      .      .      $29,519 87 "
. The debtor side of the account amounted in the aggregate to $45,018.97, and included the following:

"1880, April 5.   To T. E. Zell, .      .      .      $17,759 00
                        do.      .      .      .         6,556 61
                        do.      .      .      .         1,264 60
                   Loan,      .      .      .           833 33 "

The cause was referred to Samuel W. Pennypacker, Esq., as examiner and master, who reported as follows:

The facts as developed by the pleadings answers to specific interrogations filed, and the testimony taken before the examiner were as follows:

On or about the first day of July, 1875, Charles H. Davis, one of the plaintiffs, entered into a copartnership with Theodore W. Baker, under the firm name of Baker, Davis & Co., and purchased from the defendant, T. E. Zell, his publishing business and certain personal property for $100,000, and undertaking to pay certain enumerated debts. On April 27th, 1876, this firm was dissolved and Davis assumed all of its indebtedness. October 17th, 1876, Davis and Zell entered into the agreement of co-partnership under which the present

controversy arises. It recited a list of the debts of Davis, with the amounts owed to each creditor, aggregating $62,750.82, which for the sake of distinguishing them from the debts proper of the copartnership will hereafter be designated as the "enumerated debts."

Some of these debts appear to have been old debts of Zell, which Baker, Davis & Co. had undertaken to provide for, but this is immaterial.

It further recited that Zell was the owner of certain electrotype and stereotype plates and copyrights, agreed to be of the value of $92,769.17, and that Davis was the owner of stock, good-will, fixtures, bills receivable, accounts and manuscripts, of which an inventory was to be made.

The terms of the agreement were that Zell should contribute the use of the plates, retaining the exclusive property in them until the firm should buy them; and at the end of the partnership should take those not so bought. He should be at liberty to absent himself from the place of business at any time and as often as he chose, and should draw $500 monthly, six per cent. interest on his enumerated debt of $15,050, and two thirds of the profits. Davis should give "his exclusive time and attention to the business," draw $250 per month, and after the payment of the current expenses, and in maintaining the stock, in addition to the above-mentioned sums should draw for the payment of the enumerated debts. After the payment of these debts "the stock on hand and everything of which the said Davis was the sole owner immediately before the execution of this agreement" should be equally divided. Davis was to have the one third of the profits. The partnership was to continue for three years.

Davis testified that at the time of the formation of the partnership he showed the agreement to the principal creditors, including Mr. Bloomfield H. Moore, and this testimony was not disputed.

The only assets of the partnership were the stock, &c., inferentially to be contributed by Davis, and which actually were so contributed by him.

In the books of the firm which were in evidence before the Master, he is credited October 18th, 1876, by "amount of stock per inventory, $29,519.87."

This account practically represents the capital account of the firm, there being on the books in addition a "personal account" in the name of Davis. The partnership continued until some time between March 23d and April 5th, 1880. During its progress from three fourths to four fifths in quantity of the specific assets contributed by Davis had been used in the business. The remaining one fourth or one fifth con-

sisted mainly of unsalable material of little value. According to Davis it was worth one tenth of the original valuation of the whole. It was stored in the closet, in the entry, and in the cellar.

A portion of it appears to have been subsequently used by Zell. The business during its continuance was profitable. Davis says the moneys drawn by him and Zell were "paid from the profits of the business, of which there was a surplus." This statement is not denied.

The books show a profit the first year of $11,350.06; the second year, $7,769.27; and the third year of $10,871.54, which sums were divided between the partners in their respective proportions under the agreement.

Between March 23d and April 5th, 1880, Davis withdrew. At this time all of the debts proper of the partnership were paid except some small current bills which have since been settled. All of the assets of the firm, whatever they were, were left in the control of Zell, and have so continued since. At this time the account of Charles H. Davis on the firm ledger stood:

Dr., $18,131.30.   Cr., $41,399.44.

Mr. Zell, or some one under his direction, then made these entries in the journal:

"April 5th, 1880.

"C. H. Davis, Dr., to T. Elwood Zell, for balance due T. Elwood Zell, as per agreement of copartnership, . . . . . . . . . . . . . . . $15,050 00
"Interest on same from October 17th, 1876, to October 18th, 1879—3 years at 6 per cent.    .    2,709.00
                                                  ——————
                                                  $17,759.00

"C. H. Davis, Dr., to T. Elwood Zell, for balance due by C. H. Davis to Messrs. John Fagan & Son, and paid by T. Ellwood Zell on November 13th, 1877, . . . . . . . . . . . .    6,566.61
"Interest on same at 10 per cent., as per agreement with Mr. Davis (C. H.) from November 13th, 1877, to October 18th, 1879—704 days,  .   1,264.60
"C. H. Davis, Dr., to Loan account, one third of note of . . . . . . . . . . . . . . .    2,500.00
"Liability in Farmers' & Mechanics' Bank,   .  .      833.33"

There was no evidence before the Master that any of the enumerated debts were paid under the provisions of the agreement. Of these debts there yet remain unpaid that of Jessup & Moore for $17,615.05, that of W. Rutter & Co. for $3,750.67, and that of Porter & Coates for $2,723.62.

Neither Davis nor Zell, at the end of the partnership, made any distribution of the assets among the enumerated debts.

The construction of the agreement of October 17th, 1876, seems to the Master to present no serious difficulties.

At the time it was made, Davis had assets which were inventoried at $29,519.87. This valuation was acquiesced in during the whole time of the copartnership. Was never questioned until the testimony was taken in this suit, and not very vigorously then. He owed the sum of $62,750.82 to at least twenty creditors, all of whom, with one exception, appear to have waited for the result of the copartnership. He contributed these assets to the firm, and they, together with any increments, were to be used in a certain way. These partners were to have together $750 each month. Zell was to get 6 per cent. upon his enumerated debt, which percentage, it will be observed *en passant*, was to come from the partnership assets. The current expenses were to be paid. The stock was to be maintained, and then "Davis shall draw for the payment of the debts hereinbefore enumerated." At the expiration of the partnership, "if all the debts enumerated are paid, then the assets of all kinds shall be equally divided; but if any are unpaid, an adequate portion of the assets shall be appropriated for their payment and only the surplus divided."

Plainly the meaning of the parties was that at the expiration of the firm its assets—not the unsalable remainder of the specific assets contributed by Davis, but "the assets of all kinds"—should be appropriated to the payment of these debts to the extent of them. With this theory of the agreement in mind, it can be readily understood why creditors of Davis were willing to wait for three years, instead of getting judgment and levying upon his property at once. They could feel assured that this property or its representative, with such increments as might be added in three years of business, if prosperous, would belong to them. It can also be understood why Davis was willing to put his property absolutely into the firm as an off-set against the use of that of Zell, and to undertake to do all of the work of the firm, as practically he did. In the end the property of the firm was to be applied to the payment of his debts. Nor does this theory conflict with the passage in the agreement relied upon by defendant as follows:

"In case of the inability of the said Charles H. Davis to pay the debts before enumerated as they shall become due, all renewals of the same shall be individual, and in no event shall the firm name be used in reference to said debts."

This passage is satisfied in that it prevents a personal liability on the part of Zell, which he would have assumed if they had become firm debts.

Now this being the meaning of the agreement, what is its

legal effect?　Upon this question the Master also feels quite secure.

If a man give goods or chattels to another upon trust to deliver them to a stranger, chancery will oblige him to do it: Comyn's Digest Chancery, 4 W., 5; Story's Eq. Juris.

If a creditor gives an order on his debtor to pay a sum in discharge of his debt, and that order is shown to the debtor, it binds him in equity, though the party receiving it in no way enter into the contract: *Ex parte* South, 3 Swanston, 394; Lett *v.* Morris, 4 Simons, 607; Mandeville *v.* Welch, 5 Wheat., 286; Story's Eq. Juris., § 1044.

In equity, an order given by a debtor to his creditor upon a third person having funds of the debtor to pay the creditor out of such funds, is a binding equitable assignment of so much of the fund: Burn *v.* Carvalho, 4 M. & C., 702.

It has been decided in Pennsylvania, that if one deliver money or personal property to another under the promise of the latter to deliver it over to a third person who has a beneficial interest therein, or to convert it into money and pay him the proceeds, the third person can maintain an action at law therefor against the promisor: Wynn's Administrator *v.* Wood, 1 Out., 220; Torrens *v.* Campbell, 24 P. F. S., 470; Townsend *v.* Long, 27 Id., 143; Kountz *v.* Holthouse, 4 Norris, 235; Justice *v.* Tallman, 5 Id., 147.

In the present case Davis contributed stock of large value to the firm upon an agreement that this stock and its representative—the firm assets—should be appropriated to the payment of certain designated debts. The case is not complicated with any attempted revocation of the contribution on the part of Davis, and he is here insisting upon the fulfillment of the settlement. The agreement was notice to Zell of its terms. It was shown to the creditors at the time of its execution.

The Master is therefore of the opinion that at the expiration of the partnership the firm assets of all kinds were held by the partners in trust, to be appropriated in the first instance to the payment of the enumerated debts. It was strenuously contended before the Master that during the continuance of the firm the power of appropriation was entirely in Davis, that he might have paid one creditor in full to the exclusion of the rest, and that, therefore, there could have been no trust.

Davis made no such appropriation, and with this question the Master conceives he has nothing to do.

The trust applied to no specific assets during the continuance of the firm, and only specifically to those assets existing at its termination.

Now, what were the assets of the firm existing at the time of its termination?

Upon this, in the view of the Master, essential point the evidence presented is extremely meagre and somewhat uncertain. Nothing like an inventory or account of stock is in evidence, and there is little verbal testimony upon the subject.

The evidence shows how much of the stock originally contributed by Davis remained, but what were the general assets of the firm is involved in more or less obscurity. The Master, therefore, gropes his way to a conclusion of fact not without hesitation and difficulty.

From the fact that sums amounting to $29,990.87 were divided as profits during the three years of business, it would appear *a priori* that the amount of capital assets with which the firm commenced had not been diminished. The credit side of the account of Charles H. Davis, which as has been said was a capital stock account, showed at that time a balance of $23,268.14.

The letters of the defendant's counsel, written October 21st, 1880, and made a part of his answer, says, " the accounts of the assets of all kinds at that time showed them to be worth $26,022.03."

As has been shown, after the close of the partnership Zell entered to the debit of Davis in the firm books the amount of his enumerated debt and its accumulated interest—$17,759. He also entered in the same way items of $6,556, $1,264.60, and $833.33. The $6,556 was a debt upon which Zell & Davis were both liable to Fagan & Son.

Davis assumed it, and it became part of the enumerated debt of $11,576.99 due to Fagan & Son. But there had been no release of Zell. Fagan & Son pushed the claim, and Zell individually borrowed the amount at 10 per cent. interest, and paid the claim upon an understanding with Davis that he (Davis) should be responsible for it.

The item of $1,264.60 was the interest at 10 per cent. upon the $6,556.

With the exception of the 4 per cent. usury they together constituted an individual debt from Davis to Zell. The $833.33 was an individual indebtedness from Davis to Zell, originating before the organization of the firm.

The Master understands the entry of these individual debts upon the firm books, on the debit side of what was the capital account of the firm, to mean that Zell had appropriated to himself assets of the firm to that amount for their payment. That this is the meaning of the entries, and that this is what was done, seems to be admitted by defendant. In his answer to the specific interrogatories, he says that Davis " retired as though conscious it was but just that I should control the

assets left as I chose, and that I was free to enter the closing debits in his account."

In his answer he says, " As he was indebted to me individually, as in said articles recited, and as I had made no agreement with him or said creditors to prevent my claim against him being set off to any claim he might have against me, I credited him with the appraisement made in the inventory in said articles recited—though said credit was more than the actual value thereof, then and now—and I am advised that my right so to appropriate is undoubted ;" and again : " Now Zell claims, as during the time of the copartnership the profits were only sufficient to pay the current expenses and maintain the stock, that in an account with Davis he can charge against the credit aforesaid his debt and the interest thereon, and the amount he has paid J. Fagan & Son."

In fact, the contention of the defendant before the Master was that he was only liable to account to Davis, and that in such a settlement, as against other creditors of Davis, he was entitled to prefer himself. The above entries amount to $26,412.93, or $390.90 more than counsel for defendant in his letter of October 21st, 1880, said the assets were worth. These differing figures give the only light the Master has upon the subject. Taking the balance as found in the account of C. H. Davis on the books of the firm,    $23,268.14
And deducting from it certain admitted items :

| | | |
|---|---|---|
| April 5th, 1880, cash, . . . $245.00 | | |
| Interest, . . . . . . 56.66 | | |
| July 10th, 1880, . . . . 172.47 | | |
| Balance of personal account of C. H. Davis, . . . . . . 353.00 | | |
| | | 827.13 |

$22,441.01

Deducting further the appraised value of certain real estate which was assets of the firm, but the title to which remains in the firm of Baker, Davis & Co. :

| | |
|---|---|
| Land in Illinois, . . . . $700.00 | |
| Land in Missouri, . . . 500.00 | |
| | 1,200.00 |

$21,241.00

Deducting also the interest upon enumerated debt of Zell, which, under the agreement, was to be paid October 17th, 1876, to April 5th, 1880, three years five months and eighteen days, .    3,130.40

Leaves a balance of . . . . . .    $18,110.61

The Master finds that this sum of $18,110.61 represents the value of assets of the firm at its termination, which property belonged to the creditors of Davis, named in the list of enumerated debts, and that these assets were appropriated by Zell, the defendant, to his own use in the payment of the individual indebtedness of Davis to him.

It was claimed by counsel for plaintiffs that all of this sum so found belonged *pro rata* to the four creditors, T. Ellwood Zell, Jessup & Moore, Porter & Coates, and W. Rutter & Co., since these were the only enumerated creditors who appear to have remained unpaid.

This would be true if the rest of the creditors had been paid under the provisions of the agreement, or by Davis outside of it. But there is no evidence that either of these things happened. There is no evidence of a definite character as to how they were paid, or when, or by whom.

If, as seems to have been the case with Fagan & Son's debt, Zell paid more than the *pro rata* due them from his private resources, it would certainly be unjust to compel him to pay an increased sum to the plaintiffs because of that fact.

The Master holds that the assets of the firm at its close, of the value of $18,110.61, belonged to all of the enumerated creditors *pro rata*, and that the defendant is liable to account to the executors of Bloomfield H. Moore and to Porter & Coates only in the proportion that their claims bear to the aggregate of these debts.

After the foregoing report had been prepared, on the 6th of October, 1883, John McLaughlin, Samuel Winchester, and Isaac R. Davis Grubb, trading as Joseph C. Grubb & Co., and on the 13th of October, 1883, Theodore W. Baker, by direction of your honorable court, was permitted to intervene as parties complainant.

From the testimony taken at these meetings the Master finds that Charles H. Davis paid on account of the enumerated debt of Joseph C. Grubb & Co., being $6,000, the sum of $2,727.27, and that there remained due upon the same April 5th, 1880, an unpaid balance of $3,272.73.

The Master further finds that the enumerated debt of Theodore W. Baker, amounting to $682.87, has not been paid.

Each of these claims is entitled to its *pro rata*.

After the foregoing reports had been written and notice of filing had been given to counsel for the respective parties, D. W. Sellers, Esq., counsel for the defendant, presented the Master exceptions as follows:

I. He has erred in finding and so decreeing that the defendant hath an accountability to any one other than Charles H. Davis.

. It appearing that Charles H. Davis was credited at the beginning of the copartnership with the value of the stock contributed by him, and it further appearing that he was indebted. to the defendant for an amount exceeding the value of the assets of the firm at the end of the copartnership, the Master has erred—

II. In not allowing the defendant to set off his individual indebtedness against Davis against the ascertained value of said assets.

It appearing that the defendant outside of the agreement had done nothing with any of the enumerated creditors to stay their proceedings against the said Davis, the Master has erred—

III. In not dismissing the bill on the lack of privity between the defendant and the said creditors, and for the further reason that said agreement does not defeat the right of set-off of the defendant to any claim he had against the said Davis at the end of the copartnership.

Upon the ratable division of said assets, as it appears that Davis had made payment of his own will to J. C. Grubb & Co. and Fagan & Son, and had requested the defendant to pay the balance due the latter, the Master has erred—

IV. In not allowing the defendant the sum of  . $6,556.61
thus paid by defendant with interest thereon as
agreed,   .    .    .    .    .    .    .    .    1,264.60

                                                _____

                                                $7,821.21
                                                ==========

And distributing the assets as of the amount of $10,289.40 instead of $18,110.61.

It appearing from the agreement and the evidence that the defendant had no knowledge of the condition of the "enumerated debts" at the retirement of the said Davis, the Master has erred—

V. In not decreeing that the costs of this inquiry under this bill be charged to the said assets before distribution is made.

Subsequently to the filing of these exceptions, the case was without objection re-opened, and further testimony was taken.

From the testimony taken at these meetings, the Master finds that $4,727.86 of the "enumerated debts" were paid by Charles H. Davis from his own resources.

This should be deducted from the amount of the "enumerated debts," as found in the supplementary report, to wit, $60,023.55, which leaves a balance of $55,295.69.

The Master has carefully considered the exceptions to his findings which have been filed by the defendant. The first

exception is not sustained for the reasons given in his reports, and for the further reason that the point was raised upon the demurrer to the bill and decided adversely by the court.

The second and third exceptions are not sustained for the reasons heretofore given in his reports. With reference to the fourth exception, the Master holds that the defendant is not, because of his payment of $6,556.61 upon the enumerated debt of Fagan & Son, entitled to withdraw that sum from the assets of the partnership at its expiration, but that the effect of this payment was to work an equitable assignment of that much of the said debt to the defendant.

The exception is not sustained.

As to the fifth exception, the Master in his supplementary report, at the suggestion of the counsel for the defendant, and without any objection on the part of the counsel for the other parties in interest, withheld a decision of the question of costs, and made the recommendation in regard to them therein contained.

He believes that the understanding which was tacitly reached is there expressed exactly as it was made.

He is now called upon to decide the question of the liability for the costs upon its merits. The contention of the defendant, that because he had no knowledge of the condition of the "enumerated debts" at the time of the dissolution of the partnership, and because some judicial inquiry would probably have been necessary in order to determine which had•been paid and which had not, therefore the costs of this proceeding should be first deducted from the assets, would have much force if this were an inquiry of that character. Had the defendant come into court admitting the possession of the assets and the right of the enumerated creditors to them, and asking only the protection of the court in the distribution, he might with much propriety claim that the costs should be taken out of the funds. As a matter of fact, however, his position was that of claiming the assets for himself and of denying the right of the enumerated creditors entirely. His purpose was not to see that distribution was properly made, but to prevent it from being made at all. The Master is unable to see that there is anything in this case to take it out of the ordinary rule, and he holds that the costs should be imposed upon the defendant.

The exception is not sustained.

The court after argument entered the following decree:

And now, November 15th, 1884, after consideration of the exceptions filed on behalf of the defendant, the same, excepting the fifth, are not sustained.

And it is ordered that the costs be charged to the assets

before distribution, and the solicitors of the several parties having agreed that the costs amount to $682.56, it is ordered:—

I. That the defendant T. Elwood Zell pay to Clara J. Moore and Clarence S. Moore, executors of Bloomfield H. Moore, the sum of $6,747.17 (being $31\frac{51}{100}$ per cent. of the enumerated debt due with interest from April 5th to the date hereof).

II. That the defendant pay to Robert Porter and Henry T. Coates and George Morrisson Coates, trading as Porter and Coates, the sum of $1,019.54 (being as above in item one hereof).

III. That the said defendant pay to John McLaughlin, Samuel Winchester and Isaac R. Davis Grubb, trading as Joseph C. Grubb and Co., the sum of $1,316.49 (being as above in item one hereof).

IV. That the said defendant pay to Theodore W. Baker the sum of $2,018.41 (being as above in item one hereof).

V. That the said defendant pay to solicitors for complainants $624.44.

The defendant thereupon took this appeal, assigning for error the refusal of the court to sustain his exceptions and the action of the court on entering the decree.

*David W. Sellers*, for appellant.

*Hunn Hanson* (*Daniel Dougherty* and *John Walker Shortlidge* with him), for appellees.

Mr. Justice PAXSON delivered the opinion of the court, March 29th, 1886.

The appellant was one of the enumerated creditors referred to in the articles of copartnership of the firm T. Ellwood Zell, Davis & Co. His claim as scheduled amounts to $15,050. This sum he seeks to retain out of the assets of the firm remaining after its dissolution, as against the other creditors named in the schedule. He also claims to retain in like manner the amount he advanced his partner, Davis, to pay Fagan & Son, who were among the enumerated creditors. The Master and the Court below rejected both of appellant's claims, and made a decree appropriating the value of said assets to and among the enumerated creditors *pro rata*.

The appellant put no capital into the firm beyond the use of certain electrotype and stereotype plates, &c., valued at $92,769.17, a list of which will be found in the articles of copartnership. The firm were given the right to use these plates, and to buy them if desired, but until so bought the

1 AMERMAN—35

ownership thereof remained in the appellant. The said Davis' put into the firm the stock, manufactured and unmanufactured, the good-will and fixtures of the publishing business at that time carried on by him, bills receivable and open accounts due him, a schedule of which was intended to be made. The articles then provided: " The said Zell (appellant) shall draw for his use monthly at the rate of $500, and the said Davis (appellee) at the rate of $250. The said Zell shall draw quarterly at the rate of six per cent. on $15,050 until such debt shall be paid. Interest to be reduced as the principal is paid. After the payment of the current expenses in the conduct of the business and in manufacturing the stock, in addition to the sum as above, the said Davis shall draw for the payment of the debts hereinbefore enumerated. When said debts are fully paid, the stock on hand, and everything of which the said Davis was the sole owner immediately before the execution of this agreement, shall be equally divided, or the value thereof credited to each. The profits and losses in the conduct of the copartnership shall be divided, one third to Davis and two thirds to Zell."

The said Davis was to give his time exclusively to the business; Zell was at liberty to absent himself from the business and the city as much as he pleased.

The business appears to have been profitable, and $11,350.06 was divided according to the articles during the first year, $7,769.27 the second, and $10,871.54 the third year. At the close of the partnership some of the enumerated debts had not been paid. All the firm debts had been paid, however. The enumerated debts were the debts of Davis. The debt of Fagan & Son, as before stated, had been paid, partly by Davis and partly by money advanced him by Zell for that purpose. Certain assets of the firm remained after the dissolution, consisting principally of stock, &c., which were retained by Zell, who claimed to apply them to his enumerated debt and the amount he had advanced to pay the Fagan debt. The articles provided for the case of dissolution as follows : " At the end of the copartnership, if there be no agreement otherwise, the said Zell shall take such of the plates not purchased by the firm as his own, with liberty to continue publication therefrom without any charge therefor or any account to be made to the said Davis; as to such of the plates sold to the firm, the same shall become the individual property of the party giving the most therefor. If all the debts enumerated are paid, then the assets of all kinds shall be equally divided; but if any are unpaid, an adequate portion of the assets shall be appropriated for their payment, and only the surplus divided."

This is a very plain contract between the partners, to apply the assets remaining at the time of the dissolution to the payment of the individual debts of Davis enumerated in the articles. Davis was heavily in debt at the formation of the copartnership, and the above agreement was shown to and, known by his creditors. It was made for their benefit, and they have a clear right to enforce it, although not parties to the contract; and, under such circumstances, the party to be benefited may maintain his action at law to recover it: Torrens v. Campbell, 74 Penna. St. Rep. 470; Kountz v. Holthouse, 85 Id. 235; Wynn's Adm'r v. Wood, 97 Id. 216.

The claim of appellant to retain for his own enumerated debt, to the exclusion of others, is not sustained. It was a preferred debt as to the interest, but no further. So far as the principal is concerned, it is not preferred, because the agreement does not say so. So far we agree with the Master and the court below; but we think there was error in not giving the appellant a preference for the amount advanced by him to Davis to pay Fagan's enumerated debt. It was clearly the right of Davis to draw out of the profits to pay any one of the enumerated creditors. It was at his option when to pay and whom to pay. He saw proper to pay Fagan, and not being able to draw out enough to pay it in full, he induced appellant to advance the residue for that purpose. Davis elected to pay this debt in full, and having done so, the appellant in our view is clearly entitled to be reimbursed out of the remaining assets of the firm the amount advanced to Davis for this purpose. This does the remaining creditors no injustice. They have no ground to complain that Fagan received his whole debt, and they are in no worse position now, if we allow appellant to reimburse himself.

What remains after the appellant's advances to pay the Fagan claim are repaid is properly distributable among the enumerated creditors pro rata, including appellant's claim of $15,050. But the account will have to be re-stated, so as to allow the appellant the amount, with interest, so advanced by, him.

> The decree is reversed at the costs of the appellee, and it is ordered that said decree be so amended as to conform to this opinion.