# The McNeal Pipe and Foundry Company, Appellant, *v.* Samuel R. Bullock & Co., R. D. Wood & Co., W. G. Hopper & Co., and the Bienville Water Supply Company of Mobile, Alabama.

*Corporation—Capital stock as trust fund for creditors.*

The capital of a corporation is a trust fund for the creditors of the company, but not for the creditors of contractors who construct the plant of the corporation.

A water company entered into a contract with a firm of contractors to construct its plant, agreeing to deliver to the contractors as the work progressed a large amount of the stock and bonds of the water company. The contractors borrowed money from a firm of bankers on their notes, giving the bonds of the water company as collateral security. Subsequently the contractors, the bankers and a firm of pipe manufacturers, who were the creditors of the contractors, entered into a tripartite agreement by which the bankers were to advance to the pipe manufacturers a large sum of money, and the latter were to complete the water plant. The securities of the water company were to remain in the hands of the bankers and the pipe manufacturers to secure them in completing the contract. The contractors subsequently became insolvent, owing plaintiff a large sum of money for supplies furnished for the water plant. Plaintiff filed a bill in equity against the three parties to the tripartite agreement and the water company, praying that the securities of the water company should be declared a trust for the construction of the plant, and that the plaintiff be decreed subrogation under the tripartite agreement, or that the agreement be declared fraudulent and void as to the plaintiff. *Held*, (1) that the water company owed no duty to the plaintiff, because it owed it no debt; (2) that the tripartite agreement involved no actual or constructive fraud affecting the plaintiff's rights; (3) that the securities of the water company in the hands of the contractors or their transferees were not affected by any trust in favor of the plaintiff; (4) that plaintiff had no equity which would entitle it to subrogation as a party to the tripartite agreement; (5) that the tripartite agreement involved an express appropriation by the contractors of certain of their assets to the payment of specific debts to particular creditors, and this was not illegal, because the law does not forbid the preferment of creditors.

Argued Jan. 20, 1896. Appeal, No. 91, Jan. T., 1895, by plaintiff, from decree of C. P. No. 3, Phila. Co., Sept. T., 1892, No. 397, sustaining demurrer to bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to declare a trust for and subrogation.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in sustaining demurrer, and in dismissing bill.

*R. L. Ashhurst*, for appellant.—The capital stock of a corporation and its bonds or credit resources are trust funds in the hands of a corporation for the payment of its debts: Com. v. Fall Brook Coal Co., 156 Pa. 488 ; Sawyer v. Hoag, 17 Wall. 610 ; Upton v. Triblecock, 91 U. S. 45 ; Hawkins v. Glenn, 131 U. S. 319 ; N. R. Way Co. v. Moss, 14 Beav. 64 ; Empire City Bank, 18 N. Y. 199 ; Scovill v. Thayer, 105 U. S. 143 ; Adderly v. Storm, 6 Hill, 624 ; Holyoke Bank v. Burnham, 11 Cush. 183 ; Wheelock v. Kest, 77 Ill. 296 ; Camden v. Stuart, 144 U. S. 104.

This case is of the payment or delivery of a fund by one party to another to pay a third a debt which the first party should wish in good conscience to see paid ; and the creditor, although a stranger to the contract, can proceed directly against the assignee of the fund who has promised to pay the debts out of it: Nat. Bank v. Grand Lodge, 98 U. S. 123 ; Ardesco Oil Co. v. North American Oil Co., 66 Pa. 375 ; Bender v. George, 92 Pa. 36 ; McCormick v. Irwin, 35 Pa. 111 ; Cottrell's App., 23 Pa. 294 ; Zell's App., 111 Pa. 532 ; Justice v. Tallman, 86 Pa. 147 ; Wynne v. Wynne, 97 Pa. 216 ; Townsend v. Long, 77 Pa. 143 ; Hoffman v. R. R., 155 Pa. 19.

*William C. Hannis*, for appellees, W. G. Hopper & Co., cited Fogg v. Blair, 139 U. S. 118 ; Iron Co. v. Hays, 165 Pa. 489.

*Richard C. Dale*, for appellees, R. D. Wood & Co.

OPINION BY MR. JUSTICE DEAN, March 2, 1896:

The Bienville Water Supply Company, with a capital stock of $500,000, is a corporation chartered by the state of Alabama to supply water to the city of Mobile ; it was further authorized to issue bonds to the amount of $750,000. A small amount of the capital was actually subscribed and paid ; the company obtained options on several pieces of real estate, had an office and

furniture ready for the transaction of business; the estimated cost of the construction of the plant was $750,000. Thus matters stood on 10th of April, 1886, when the company entered into a written contract with Samuel R. Bullock & Co., waterwork contractors, by which Bullock & Co. covenanted at their expense to construct, equip and operate the waterworks, and deliver the same to the water company free from all liens at the expiration of six months after completion. In consideration, the water company covenanted to deliver to the contractors the $500,000 of capital stock as full paid, not subject to assessments, also the $750,000 first mortgage bonds; the stock and bonds to be delivered in monthly installments as the work progressed, based on estimates of the chief engineer as to value of work done and materials furnished the preceding month. On the completion and acceptance of the work, final delivery of all the bonds and stock to be made. Before the acceptance of the work, the company delivered the stock and bonds. The contractors proceeded with the work of construction; as they were to receive and had received nothing but paper (stock and bonds) for their work, of course, unless they were men of abundant capital, they had to procure money on this paper. During the first year, Wm. G. Hopper & Co., bankers, of New York, made advances to Bullock & Co. on their notes, taking the bonds as collateral, and by the 13th of June, 1887, had loaned them $375,000, equal to 50 per cent of the par value. Then, an agreement was entered into between Hopper & Co. and Bullock & Co., by which the bankers agreed to advance to the contractors, in two equal installments, 16 per cent additional on the par value of the bonds, the last installment of 8 per cent to be paid on completion of the work free from all incumbrances; as additional collateral to the bonds, Bullock & Co. were to deliver to Hopper & Co. the $500,000 capital stock. Hopper & Co. further took an option to purchase at any time up to eight months after the completion of the waterworks the whole $750,000 of bonds at 92½ per cent of their face value. Under this agreement, Bullock & Co. continued the work until October 26, 1887; during that time, Hopper & Co. had advanced to them 8 per cent of the sixteen, or about $60,000. It was then clear, the additional sum of 16 per cent, about $120,000, under this last agreement, made four months before, would not nearly

complete the works; so a tripartite agreement was entered into between R. D. Wood & Co., creditors of Bullock & Co., for pipe and other materials, Hopper & Co. and Bullock & Co., by which Hopper & Co. were released from any obligation to make further advances to Bullock & Co., and they agreed to furnish R. D. Wood & Co. $200,000 more, to be applied by Wood & Co. in completing three contracts of Bullock & Co., among them the Mobile contract, which it was estimated would consume about $60,200 of the amount, in addition to the debt already owing to Wood & Co. by Bullock & Co. Hopper & Co. agreed to carry the debt of Bullock & Co. for a period of eighteen months after the completion of the works on four months' renewals at 6 per cent discount; on default of renewal or payment of discount, to have the right on 10 days' notice to Wood & Co. and Bullock & Co. to sell collateral, and when the debt due Hopper & Co. from Bullock & Co. was paid in full, Wood & Co. to control further sale of the securities. Hopper & Co. furnished the additional $200,000 to Wood & Co., who applied the same as stipulated to the completion of three contracts of Bullock & Co., among them the Mobile contract. The works of the Mobile plant were completed and put in full operation; the stocks and bonds issued by the Bienville Water Company to Bullock & Co., and by them delivered to Hopper & Co., are in their and Wood & Co.'s possession. Bullock & Co. are insolvent, but became so after the completion of the Mobile contract; at the date of their insolvency, they owed to these plaintiffs, for supplies bought by them for the Bienville Water Supply Company, a balance of over $41,000, they having been paid in cash $161,000.

The plaintiffs filed this bill against Hopper & Co. and R. D. Wood & Co., averring the material facts in substance as we have stated them, and praying: 1. That the stock and bonds of the Bienville Water Company be declared a trust for the construction of the works.

2. That the agreement between Bullock & Co. and Hopper & Co. be declared fraudulent, and decree made that it be canceled.

3. That plaintiff either be decreed subrogation under the tripartite agreement, or that it be declared fraudulent and void as to them.

4. For an account and sale of the stock and bonds.

To this bill, defendants demurred, averring, that on their complaint as set out, plaintiffs were entitled to no relief as against these defendants. The court below sustained the demurrer and dismissed the bill; plaintiffs appeal, assigning for error the decree of the court. In our statement of the facts, we have made it not only as favorable to plaintiffs as set out in the positive averments, but we have also drawn the inferences of fact therefrom, which in the argument are claimed as warranted.

What appears from the bill?

1. The plaintiffs dealt with and are creditors of Bullock & Co., who were contractors with the Bienville Water Supply Company.

2. It is not averred they had any contract with the water company, or that their materials were even furnished on the credit of the water company.

It is argued, the capital of the water company is a trust fund for the creditors of the company; concede this, that does not fix it as a trust fund for the creditors of contractors who construct the plant. If plaintiffs had contracted directly with the water company to supply the pipe to the amount of $200,000, the amount of their bill, and take in payment stocks and bonds, would that have rendered them accountable as trustees to their creditor, the furnace company, out of whose metal they made their pipes? As long as these securities were in the possession of the water company, they were a trust fund for the payment of its debts; by the contract, the company became indebted in the whole amount of the securities to Bullock & Co., and under the contract delivered them to their creditor. Bullock & Co.'s title, then, was as absolute, so far as concerned third parties, as if, instead of stocks and bonds, they had received cash. True, if there was a premature delivery, and Bullock & Co. had attempted to defraud the company, the securities would have been impressed with a trust in favor of the party defrauded, but not in favor of third parties. But even if the stock and bonds were delivered sooner than the contract called for, no fraud was intended or attempted; the contract of Bullock & Co. was fulfilled according to the intention of the parties, and the works completed by money loaned to

Bullock & Co. on these securities; and out of this money, plaintiffs were paid more than $161,000 of their whole bill. It is not averred, actual fraud on Bullock & Co.'s creditors was intended by the parties to the several agreements; nor on the facts stated, is there a semblance of constructive fraud. The water company owed no duty to these plaintiffs, because it owed them no debt; Bullock & Co. owed them a debt; they also owed debts to Hopper & Co. and Wood & Co.; they paid these last creditors, for a very good reason; they furnished the money to complete the works, out of which plaintiffs and others were paid in large part their claims. Bullock & Co. did not pay plaintiffs' whole debt, because they reached the bottom of the purse filled by Hopper & Co. and Wood & Co. before they reached plaintiffs' balance. If defendants had not advanced the large sums they did, the securities would have been worthless; plaintiffs would have been no better off, while defendants would have been much worse off. We fail to discover in plaintiffs' bill any ground for the interposition of equity.

Every authority of the many cited by the learned counsel for appellant sustains beyond question the proposition, that the capital of a corporation is a trust fund for the payment of its debts, but not one of them intimates that, after such capital has been appropriated in payment of one debt, it is a trust fund in the hand of that creditor for the payment of his creditors.

Nor have these plaintiffs any equity which would entitle them to subrogation as parties to the tripartite agreement: Townsend v. Long, 77 Pa. 143; Zell's Appeal, 111 Pa. 532, and the other cases cited on this question, hold, in substance, that where a fund has been set apart for creditors, they have a clear right in equity to enforce their claims upon it, although not parties to the contract. But here the bill does not aver these securities were set apart for the benefit of Bullock & Co.'s creditors; in fact, the averment is, that they were delivered to Bullock & Co. in payment of the water company's debt, and transferred by Bullock & Co. in payment of their debt to defendants; there was, from the beginning, a distinct, express appropriation to the payment, not of creditors generally, but to the payment of specific debts and particular creditors. If the law

forbade the preferment of creditors, then, only, could this fund be treated as a trust fund for general creditors of Bullock & Co., yet not parties to the agreement.

The decree of the court below is affirmed, and the appeal is dismissed.